# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

|  |  |
|---|---|
| JOSE EDUARDO DOMINGUEZ PEREZ, | ) |
| Petitioner, | ) |
| v. | ) |
| TRINITY MINTER, Warden of West Tennessee Detention Facility; SCOTT LADWIG, in his official capacity as Acting Director of the New Orleans Field Office of ICE's Enforcement and Removal Operations Division; TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; and PAMELA BONDI, U.S. Attorney General, | ) No. 2:26-cv-02166-SHL-cgc |
| Respondents. | ) |

## ORDER GRANTING PETITION

On February 19, 2026, Petitioner Jose Eduardo Dominguez Perez filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 after he was held in immigration detention without a bond hearing. (ECF No. 1.) He seeks release, or a bond hearing, in addition to attorney's fees under the Equal Access to Justice Act ("EAJA"). (Id. at PageID 1, 22.) On February 23, the Court issued an order requiring Respondents to respond. (ECF No. 6.) Respondents responded four days later. (ECF No. 8.) Dominguez Perez replied on March 2. (ECF No. 9.) For the reasons explained below, Dominguez Perez is entitled to immediate release, and the Petition is **GRANTED**.

## BACKGROUND

Dominguez Perez, a citizen of Mexico, entered the United States at an unknown location around twenty years ago. (ECF Nos. 1 at PageID 10; 8 at PageID 48.) According to Dominguez

Perez, he "was not apprehended by immigration officials upon entry into the country nor at any other time after his entry and has never had deportation or removal proceedings." (ECF No. 1 at PageID 10.) There is no indication that he has any criminal history, and he "previously held DACA status until 2016 when it expired." (Id.) He "lives in Shelby County, Tennessee[,] with his fiancé and two children who are U.S. citizens." (Id.)

On November 15, 2025, Dominguez Perez was pulled over by patrol officers on his way home from work. (Id.) He was then taken into ICE custody and remains at the West Tennessee Detention Facility in Mason, Tennessee. (Id.) The present Petition followed, the crux of which argues that Dominguez Perez was detained without a bond hearing.

Indeed, under recently adopted guidance from DHS and ICE, Dominguez Perez is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and was allegedly declared ineligible to be released on bond. Until recently, however, most noncitizens in this situation were given bond hearings under a different provision, § 1226(a). See Godinez-Lopez v. Ladwig, No. 25-CV-02962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025). Section 1226(a) allows immigration authorities to release immigrants from detention on a bond of $1,500 or more, unless they require detention for certain reasons. For example, noncitizens with certain criminal records may not be released on bond. 8 U.S.C. § 1226(c).

Section 1225(b)(2)(A), on the other hand, prohibits a bond for all "applicants for admission" who are "seeking admission." "Applicants for admission" has been interpreted to mean recent arrivals, including those who have not been "physically present in the United States continuously" for the previous two years. See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has

2

been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a). Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated."). The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission." And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A).

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status. As a result, all undocumented immigrants awaiting removal are detained without a bond hearing. This new interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025). (ECF No. 1 at PageID 2–3.)

Dominguez Perez faces the risk of continued detention without a bond hearing. (Id. at PageID 10–11.) His Petition alleges a violation of 8 U.S.C. § 1226(a) and a procedural due process violation under the Fifth Amendment. (Id. at PageID 19–21.) He seeks his immediate release, or a bond hearing and reasonable attorney's fees under the EAJA. (Id. at PageID 21–22.)

In response, Respondents contend that Dominguez Perez failed to exhaust his administrative remedies; that the Fifth Circuit's recent opinion in Buenrostro-Mendez v. Bondi,

3

166 F.4th 494 (5th Cir. 2026), provides persuasive authority for denying the petition; that Dominguez Perez should be treated for due process purposes as if stopped at the border; and that, if the Court finds that § 1226(a) applies to him, he should be granted a bond hearing and not immediately released. (ECF No. 8 at PageID 48–54.)

## ANALYSIS

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'" Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)). Dominguez Perez challenges his detention without bond as violative of his constitutional rights. (ECF 1 at PageID 2.) The Court first considers the threshold question of whether Dominguez Perez should be required to exhaust his administrative remedies. Then, the statutes are construed to determine whether §1225 or § 1226 is applicable. A due process analysis follows. Finally, the request for attorney's fees is addressed.

### I. Exhaustion

If Congress "specifically mandates" exhaustion of administrative remedies, a petitioner must pursue relief through those administrative processes before seeking habeas relief. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). When Congress is silent on administrative exhaustion, "sound judicial discretion governs." Id. Thus, the doctrine of prudential exhaustion holds that, in the absence of a textual exhaustion requirement, courts can use discretion to refuse to hear habeas petitions that challenge bond determinations until a petitioner exhausts available administrative remedies. McCarthy, 503 U.S. at 144. The Sixth Circuit has previously applied this doctrine to dismiss petitions for lack of jurisdiction. See Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at 1–2 (6th Cir. July 16, 2018). In the context of immigrant

4

detention, some district courts require detained immigrants to exhaust their administrative remedies—by appealing bond decisions to the BIA and receiving adverse decisions—before the courts will review their habeas petitions. E.g., Villalta v. Greene, No. 25-cv-01594, 2025 U.S. Dist. LEXIS 169688, at *6–7 (N.D. Ohio Aug. 5, 2025).

In some cases, however, exhaustion is excused, and courts review habeas petitioner claims. Courts have reached these conclusions when (1) "the legal question is fit for resolution and delay means hardship, or (2) exhaustion would prove futile." Shalala v. Ill. Council on Long Term Care, 529 U.S. 1, 13 (2000) (citation modified).

An issue is fit for judicial resolution when it presents a purely legal question. Contreras-Lomeli v. Raycraft, No. 25-cv-12826, 2025 U.S. Dist. LEXIS 207162, at *8 (E.D. Mich. Oct. 21, 2025) (citing Loper Bright Enters. v. Raimondo, 603 U.S. 369, 385 (2024)). Further, when administrative procedures involve "an indefinite or unreasonable timeline," such delays result in hardship. Id. If there is a risk of extended, "potentially unlawful detention" during such delay, then exhaustion is excused. Id.

As for futility, waiver of exhaustion "is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought." Id. at *9 (quoting Cooper v. Zych, No. 09-CV-11620, 2009 U.S. Dist. LEXIS 75423, at *2 (E.D. Mich. Aug. 25, 2009)).

Respondents argue that the Court should dismiss the Petition based on prudential exhaustion, as Dominguez Perez has not appealed to the BIA and received an adverse decision. (ECF No. 8 at PageID 50.) They recognize that Congress has not imposed an administrative exhaustion requirement, and that "sound judicial discretion governs" the Court's decision. (Id. at PageID 49 (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)).) But they point to the Sixth

5

Circuit's opinion in Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at *1–2 (6th Cir. July 16, 2018), and certain decisions in the Northern District of Ohio, e.g. Monroy Villalta v. Greene, 794 F. Supp. 3d 528 (N.D. Ohio 2025), which required petitioners to appeal to the BIA before seeking habeas relief under "prudential principles of exhaustion." (ECF No. 8 at PageID 49.)

But neither 8 U.S.C. §§ 1225 nor 1226 contain a textual exhaustion requirement for immigrants in ICE custody. Similarly, 28 U.S.C. § 2241 lacks an exhaustion requirement. And the Sixth Circuit has not yet spoken on the issue of prudential exhaustion in these recent cases. See Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 13 at PageID 101 (W.D. Tenn. Dec. 30, 2025). Therefore, exhaustion may only be required here based on "sound judicial discretion." McCarthy, 503 U.S. at 144. But, exhaustion may be excused if "the legal question is fit for resolution and delay means hardship, or exhaustion would prove futile." Shalala, 529 U.S. at 13.

Dominguez Perez's failure to exhaust is excused. First, the question he poses in the Petition is fit for resolution and undue delay would impose hardship on him. The Parties do not dispute any material facts. (See ECF Nos. 1 at PageID 10–11; 8 at PageID 48.) Thus, deciding which statute applies to Dominguez Perez's detention is a purely legal question, "which is right in a federal court's wheelhouse." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8. Further, if Dominguez Perez is required to pursue an appeal with the BIA, his appeal process would likely take six months or more. See id. (citing Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 U.S. Dist. LEXIS 175767, at *9 (E.D. Mich. Sep. 9, 2025)). Bond hearings were designed to prevent prolonged detention during removal proceedings, which are often lengthy. Reyes, 2025 U.S. Dist. LEXIS 175767, at *9 (citations omitted). Therefore, denying Dominguez

6

Perez the chance to have a bond hearing merely because he did not appeal to the BIA[1] may force him "to endure six months or more of potentially unlawful detention and thus would cause him great hardship." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8.

Furthermore, the futility of exhaustion is an independent reason to excuse exhaustion here. The BIA stated in Yajure Hurtado that § 1225(b)(2)(A) applies to detained illegal immigrants who "have been residing in the United States for years." 29 I. & N. Dec. at 220–21. Thus, any appeal would be futile, and exhaustion is excused.

**II.     Statutory Interpretation**

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void[,] or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)). Each word within a statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" Kentucky v. Biden, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207, (1997)).

Custody over noncitizens during removal proceedings is generally governed by two statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and detention of aliens"). Section 1225(b) requires mandatory detention, providing in relevant part:

> (b)     Inspection of applicants for admission
>                 . . .
>         (2)     Inspection of other aliens
>             (A)     In general

---

[1] There is no evidence that Dominguez Perez has received an appealable decision from the immigration court. Thus, the risk of undue delay is even greater here than in cases where, for instance, an IJ held a bond hearing and denied bond.

7

> Subject to subparagraphs (B) and (C), in the case of an alien who is an <u>applicant</u> <u>for</u> <u>admission</u>, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien <u>shall</u> <u>be</u> <u>detained</u> for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). Under this section, all applicants for admission "shall be detained." <u>Id.</u> § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in relevant part:

> (a)   Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien <u>may</u> <u>be</u> <u>arrested</u> <u>and</u> <u>detained</u> pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1)   <u>may</u> <u>continue</u> <u>to</u> <u>detain</u> the arrested alien; and
> (2)   <u>may</u> <u>release</u> the alien on—
>    (A)   bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General .
>    . . .

8 U.S.C. § 1226(a) (emphasis added). The exception in § 1226(c) prohibits releasing on bond a noncitizen found to be inadmissible, who <u>also</u>,

> is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .

<u>Id.</u> § 1226(c)(1)(E)(ii). "Noncitizens arrested and detained under § 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an [Immigration Judge ('IJ')]." <u>Lopez-Campos</u>, 2025 WL 2496379, at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified). "The IJ evaluates whether there is a risk of nonappearance or danger to the community." <u>Id.</u> (citing <u>Guerra</u>, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Thus, except for those noncitizens with a

8

record of certain criminal offenses, § 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a hearing before an IJ on the issue.[2]

Dominguez Perez argues that ICE's new interpretation of § 1225(b)(2)(A) violates § 1226(a) and due process under the Fifth Amendment. (ECF No. 1 at PageID 19–21.) He argues that 8 U.S.C. § 1226(a) applies to his detention because § 1225(b)(2)(A) "cannot be read to apply to those who are accused of residing in the United States for many years prior to apprehension and removal proceedings." (ECF No. 1 at PageID 20.) Thus, he seeks his immediate release. (Id. at PageID 22.)

Respondents argue that § 1225(b)(2)(A), not § 1226(a), applies to Dominguez Perez because he "entered the United States without inspection or parole" and thus remains "an 'applicant for admission' who is treated, for constitutional purposes, as if stopped at the border." (ECF No. 8 at PageID 50–51.) As a result, they assert that "he is subject to mandatory detention and not entitled to a bond hearing." (Id. at PageID 51.) They incorporate by reference their statutory arguments from previous cases such as Godinez-Lopez, 2025 WL 3047889. (Id.)

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondents' contention that Dominguez Perez is "seeking admission." Beginning with the titles, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The title of § 1226(a) is "Apprehension and detention of aliens." Although titles of statutes are not controlling, they are "tools available for the resolution of a doubt about the

---

[2] See 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . . After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . . [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

9

meaning of a statute." Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified). Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal" proceedings. But Dominguez Perez was not "arriving" when he was detained far away from the United States border, after having been in this country for twenty years. (ECF No. 1 at PageID 10.) Also, the record does not show that he was eligible for expedited removal proceedings. Thus, the mandatory detention provision of § 1225 does not apply to him.

Further, the subject matter of § 1225 undercuts Respondents' reading of the statute. Section 1225 describes the process of inspecting and removing immigrants actively crossing the border. See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."). And Respondents' reading of § 1225(b)(2)(A) ignores several words and phrases within the statute itself. "If possible, every word and every provision is to be given effect." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012). But to apply § 1225(b)(2)(A) to Dominguez Perez would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the <u>examining immigration officer</u> determines that an alien <u>seeking</u> admission is <u>not clearly and beyond a doubt entitled to be admitted</u>, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). The record does not show that Dominguez Perez was seeking admission at the time of his detention, and nor does it show that he had received a determination by an immigration officer that he was "not clearly and beyond a doubt entitled to be admitted." The language of § 1225(b)(2)(A) makes sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for

10

twenty years.  To interpret "alien seeking admission" using its ordinary meaning but outside the context of the provision, as argued by Respondent, is untenable.

Also, Respondents' interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous.  That subsection carves out an exception to the general rule that an arrested noncitizen is eligible for a bond.  Under subsection (c), a noncitizen with a certain criminal history must be mandatorily detained.  8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .").  But, under Respondents' reading of § 1225, all arrested noncitizens must be detained without bond.  Thus, § 1226(c) would have no purpose.  Yet, courts must "give effect, if possible, to every clause and word of a statute."  Duncan v. Walker, 533 U.S. 167, 174 (2001).  Dominguez Perez's reading of the statute is the only one compatible with the presence of § 1226(c).  What is more, Dominguez Perez has no criminal record in the United States, so this mandatory detention provision cannot conceivably be applied to him.  See § 1226(c)(1)(E)(ii).

The plain language of § 1226(a) describes Dominguez Perez's situation.  That section applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Dominguez Perez was charged with being removable and detained in west Tennessee.  Thus, the Attorney General has discretion under this section.  She "may continue to detain [him]" or she "may release [him] on

11

bond." (Id.)  But the Attorney General may not deny him the bond hearing to which he is entitled.  See 8 C.F.R. § 1236.1(c)(8), (d)(1).

Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in Dominguez Perez's favor, but the Congressional intent behind § 1226(a) is also supportive.  In 2025, Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude persons with criminal histories from receiving bond.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  Congress would not have added exceptions to the broad rule of § 1226(a) if, as Respondents assert, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases.  See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally.  In fact, it proves the opposite.").  On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025.  After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless." Lopez-Campos, 2025 WL 2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL 237441, at *12 (D. Minn. Aug. 15, 2025)).

Finally, Respondents point to a newly published Fifth Circuit opinion which reached an opposite conclusion on these issues.  (ECF No. 8 at PageID 50–52 (citing Buenrostro-Mendez, 166 F.4th 494).)  Particularly relevant to Dominguez Perez's arguments, the Buenrostro-Mendez court found that "seeking admission" is equivalent to being an "applicant for admission."  166 F.4th at 502–06.  As a result, the Fifth Circuit held that all those who have crossed the border unlawfully fall under § 1225, not § 1226, and thus are ineligible for bond hearings.  Id. at 508.

12

Buenrostro-Mendez does not bind this Court, and its reasoning is not persuasive here. First, because it conflates the terms "seeking admission" with "applicant for admission," it renders the two phrases redundant. The canon against surplusage, and common sense, dictate that these terms should have different meanings because the statute includes them both in the same provisions and even in the same sentences. See Buenrostro-Mendez, 166 F.4th at 510 (Douglas, J., dissenting) (quoting Scalia & Garner, supra, at 170). Second, the holding in Buenrostro-Mendez makes superfluous the existence of § 1226(c)(1), a part of the Laken Riley Act, which lists certain crimes that render an applicant ineligible for a bond hearing. If a criminal record makes a bond hearing impossible, it makes little sense that all bond hearings for unlawful entrants are impossible. See Buenrostro-Mendez, 166 F.4th at 512 (Douglas, J., dissenting).

Thus, given the plain language of §§ 1225 and 1226, the arrest and detention of an illegal immigrant who has been continuously present in the United States for twenty years is governed by § 1226(a), and is subject to the discretionary bond process in that provision.

**III.   Due Process**

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)." Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). In the context of civil immigration detention, the Sixth Circuit applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen. See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020). Those factors include (1) "the private interest that will be affected by the official

13

action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

Dominguez Perez argues that Respondents violated the Due Process Clause of the Fifth Amendment by detaining him "without a bond redetermination hearing to determine whether he is a flight risk or danger to others." (ECF No. 1 at PageID 21.) Respondents, however, assert that Dominguez Perez's due process rights were not violated because, without a lawful entry, he should be "'treated' for due process purposes 'as if stopped at the border.'" (ECF No. 8 at PageID 53 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)).)

Here, because § 1226(a) applies to Dominguez Perez, he is owed the process given to him under that statute. As for the Mathews factors, (1) Dominguez Perez has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and danger to the community, and, (3) given Dominguez Perez's clean criminal record, it will be difficult for the Government to demonstrate an interest in his detention. Indeed, before he was apprehended, Dominguez Perez was present in the United States for twenty years "and lives in Shelby County, Tennessee[,] with his fiancé and two children who are U.S. citizens." (ECF No. 1 at PageID 10.) These facts indicate his ties to the United States, his desire to remain, and his expectation that he would remain free from government custody. Also, he was not otherwise incarcerated when ICE detained him.

As a result, his detention without bond violated his liberty interest, which cannot be casually tossed aside. Thus, Dominguez Perez is entitled to immediate release. See Villafranca Lara v. Ladwig, No. 26-CV-02079-SHL-tmp, 2026 WL 401204, at *10 (W.D. Tenn. Feb. 12, 2026) ("Because ICE purported to detain [petitioner] under § 1225(b)(2)(A), which includes no

14

provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a)."). Accordingly, his detention under the mandatory detention framework of § 1225(b)(2)(A) violates his due process rights. Thus, consistent with the Court's decision in Godinez-Lopez, and after consideration of the record, Dominguez Perez's petition is **GRANTED**.

## IV.     Attorney's Fees and Costs

Dominguez Perez seeks attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. (ECF No. 1 at PageID 22.) Section 2412(b) allows a court to award "reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States." 28 U.S.C. § 2412(b). The Federal Rules require that claims for attorney's fees and related expenses be made by motion. Fed. R. Civ. P. 54(d)(2)(A). So Dominguez Perez must timely file a motion that complies with Local Rule 54.1(b) to seek attorney's fees and costs. See LR 54.1(b).

## CONCLUSION

For the reasons stated above, the Petition is **GRANTED**. Respondents are ordered to release Dominguez Perez immediately. Respondents are **ENJOINED** from pursuing Dominguez Perez's detention under 8 U.S.C. § 1225(b)(2)(A). Respondents are further **ORDERED** to file a Status Report with this Court on or before March 6, 2026, to certify compliance with this Order.

**IT IS SO ORDERED,** this 3rd day of March, 2026.

s/ Sheryl H. Lipman<br>
SHERYL H. LIPMAN<br>
CHIEF UNITED STATES DISTRICT JUDGE